## FRASER & DILL v. CITY COUNCIL OF CHARLESTON.

1. Where an executor qualifies after his co-executor has fraudulently misapplied the estate, and afterwards a receiver is appointed without objection, the court will not, upon the death of the guilty executor, restore the management of the estate to the survivor.

2. The rulings in this case on former appeals, (11 *S. C.* 515; 13 *Id.* 542,) as to the judgments obtained at law against the executor, stated.

3. Judgments obtained at law by innocent creditors against an executor on notes purporting to bear the testator's signature, but which had been forged by the executor in the testator's life-time, are conclusive upon the executor and upon the legatees, as his privies.

4. A judgment rendered on a creditors' note against an estate on the same day that an injunction was obtained and filed in a creditors' suit restraining actions, the creditors' bill being afterwards discontinued, is not evidence of collusion on the part of the creditor suing at law, nor notice sufficient to put him upon inquiry as to the genuineness of the signature to his note.

5. That fraud avoids everything is a principle which cannot be invoked by the party himself, who committed the fraud, nor by his privies.

6. Legatees are proper parties to a bill to marshal the assets of their testator, but not to an action at law against the executor.

7. This case distinguished from *Wilson* v. *Kelly, ante* p. 160.

---

Before FRASER, J., Charleston, March, 1882.

The opinion fully states the case.

*Messrs. G. D. Bryan, A. G. Magrath, Robert Chisolm* and *B. J. Whaley,* for appellants.

*Messrs. McCrady & Sons, S. Lord* and *James Conner,* contra.

November 23d, 1883.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   It will be useful to precede the consideration of the several questions made in this case by a brief statement of the facts out of which they arise.

On January 26th, 1872, Joseph Whaley died possessed of a large estate, which he disposed of by will, appointing as his executors his son William Whaley and his kinsman William James Whaley.   Soon after his death William Whaley qualified, and continued to act as sole qualified executor until July 7th, 1874, when William James Whaley also qualified.   Up to this time a number of persons claiming to be creditors of the testator, Joseph Whaley, had recovered judgments, mostly by default, against William Whaley as executor; but of these it will only be necessary to state the following, which are particularly assailed, viz.: R. K. Scott, for $5,373.01, May 30th, 1874; Fraser & Dill, $2,069.76, June 8th, 1874; Mary F. Davie,

z

$1,400, June 8th, 1874, and the judgment of Gadsden and wife for $15,129. This latter action was commenced in 1873 against William Whaley as executor, but, he having died in the meantime, judgment was finally recovered against William James Whaley, as surviving executor, after he had qualified in October, 1880.

On June 8th, 1874, the Peoples' Bank of South Carolina, claiming to be a bond creditor of Joseph Whaley, filed a complaint in the nature of a creditors' bill to marshal the assets of Joseph Whaley, and on the same day obtained an order for temporary injunction against parties suing at law. On July 13th, 1874, Fraser & Dill, having obtained judgment, as above stated, against the executor, William Whaley, instituted this action charging insolvency and maladministration against the acting executor, William Whaley, and praying that he should be held to account for the estate of Joseph Whaley, and especially for certain stocks of the city of Charleston, which were standing in the name of the testator at the time of his death, and for the appointment of a receiver, &c. This cause, by consent, was incorporated into that of the bank above referred to, under which the creditors of Joseph Whaley had been called in.

To this proceeding the beneficiaries under the will of Joseph Whaley were not made parties; only William Whaley, executor, and the city council; but afterwards, by order, William James Whaley, lately qualified as executor, was also made a party, and he answered : " That all the transactions referred to in the complaint occurred a long time before he qualified as executor, and took place with William Whaley, the first executor, and the defendant is in no wise connected with the same ; wherefore he asked to be dismissed with his costs," &c. At this time the Charleston stock was the principal matter in controversy. Judge Reed made a decree from which there was no appeal, and this court sent the case back for further testimony, &c. 8 *S. C.* 318.

Upon the second investigation it appeared that most of the scrip for the Charleston stock had not been transferred by the testator, Joseph Whaley, in his life-time, but that his son William, afterwards his acting executor, had signed his name without

authority.    During this inquiry as to the genuineness of the signatures purporting to be those of Joseph Whaley, experts as to handwriting were examined and comparison of signatures resorted to, when it seems that some witnesses testified that the endorsements on the notes of plaintiffs and other creditors, who, as before stated, had obtained judgments on their endorsements against William Whaley, as executor, were in the same handwriting as the transfers of the Charleston scrip ; but the referee, Mr. Dingle, made no report on testimony which fell out thus incidentally, confining himself to the matter of the Charleston scrip, which alone had been referred to him.    As to that, he reported, as matter of fact, that the transfers of scrip, with one exception, were not in the proper handwriting of the testator, Joseph Whaley.

Judge Wallace confirmed this report, held the city council liable, and ordered the appointment of a receiver of the estate of Joseph Whaley.    In his decree Judge Wallace said : " In the argument at the hearing, the testimony to the effect that the signatures of Joseph Whaley upon the notes held by plaintiffs and other creditors were in the same handwriting as the disputed signatures upon the city scrip, was pressed upon my attention, and it was suggested that if the disputed signatures upon the scrip were not genuine then the signatures upon said notes were not genuine, and the holders thereof had not the right to sustain the relation of plaintiffs to this action.    *    *    *    It was said, on the other hand, that the notes referred to were in judgment, and had been, therefore, passed upon by a court of competent jurisdiction and could not be collaterally impeached, and could only be assailed in a direct proceeding instituted for that purpose.    The issue thus raised is not ripe for decision in this decree, but may again arise in the subsequent progress of the cause.    *    *    *    It is further ordered that the receiver have leave to institute such proceedings as he may be advised may be proper and necessary to try the validity of any claims against the estate of Joseph Whaley, and defend such proceedings as may be instituted against him," &c.    This judgment was affirmed in this court.    See 11 *S. C.* 515.

About this time (1879) William Whaley, the acting executor,

died. The receiver, T. W. Bacot, Esq., did not exercise the authority given him in assailing judgments recovered against William Whaley while he was acting as sole qualified executor; but the city council of Charleston procured the assignment of the shares of Josephine M. Porter and Sabina Morris, grand-daughters of Joseph Whaley, and entitled to two-thirds of the legacy of $20,000 of city stock, under his will given to Maria Evans Morris, and as such assignee made application to the Circuit Court to allow them to be made parties in order to protect their interest. The Circuit judge (Fraser) refused the motion, but upon appeal to this court, under the very peculiar circumstances, the order was reversed and the parties allowed to come in—Judge McIver, in delivering the judgment of the court, saying: "But when there is no such representative before the court, and especially when, as in this case, the person appointed as such representative (the executor) has been declared unfit to be entrusted with the administration of the assets of the testator, not merely on the ground of negligence or want of capacity, but upon the allegations and proof of the grossest fraud, he certainly cannot be regarded by a court of equity as the representative of the legatees, one of whom is a minor, and, therefore, peculiarly entitled to the protecting care of the court. In such case the legatees must necessarily represent their own interests, and for this purpose must be brought before the court as parties. * * * The legatees undoubtedly had a right to be let in as parties and to have the receiver restrained from distributing the fund until they could have an opportunity of asserting their rights in such form as they may be advised," &c. See 13 *S. C.* 542.

Under this judgment the plaintiffs filed a supplemental complaint, making the said legatees parties, and they, through the city council, answered, claiming affirmative relief. They deny that the open accounts, to a large amount set up as claims against Joseph Whaley, are his debts, and as to them they demand strict proof. They also claim that, as legatees, they have the right in a creditors' bill to assail and set aside judgments previously obtained against the sole qualified executor before they were called in as parties, upon the ground that the signatures of the

endorsements, on which the judgments were obtained, were not in the handwriting of the testator, Joseph Whaley, "and said judgments were obtained by and through the fraud of the executor, who knew but suppressed the fact that the signatures were not the handwriting of Joseph Whaley, and the rights of his legatees cannot thus be affected and destroyed; and all the debts, and especially those upon which judgment was allowed to pass on June 8th, 1874, are no more than the debts of William Whaley, and not chargeable upon the estate of his testator."

No new testimony was offered on this new issue, but, by consent, the case was tried upon the testimony taken before the referee in the original cause as to the city scrip. Judge Fraser held that: "Some of the claims had been put into judgment by suit against William Whaley, at the time the only qualified executor, and others have been established only under the original proceedings, to which this case is supplemental. In the absence of collusion, I must regard a judgment against an executor as conclusive against the world whenever the same matter comes in question again. It seems to me that any other rule would make it necessary to change the whole practice of suing claims against the estate of deceased persons. With these views, I hold that all the judgments proved before the referee, G. W. Dingle, Esq., including the judgment of *Edward H. Gadsden and wife* v. *William Whaley, executor of Joseph Whaley,* and as to all of which there was evidence before me, are valid claims against the estate of Joseph Whaley," &c.

He, also, in relation to the claim of William James Whaley, surviving executor of Joseph Whaley, to have restored to him the custody of the estate of Joseph Whaley, held as follows: "If the court is to administer the fund it must have control and possession of it, and especially when William James Whaley, the surviving executor, while entirely free from fault otherwise, does not seem to have used any exertion to aid in saving the estate from the alleged fraudulent administration of his co-executor, William Whaley. The motion, therefore, made before me and earnestly pressed, to take the estate of Joseph Whaley out of the hands of the receiver, appointed by this court, and to

restore it to the custody of William James Whaley, surviving executor, is refused."

From this decree the legatees, the city council of Charleston, as assignee, and William James Whaley, as surviving executor of Joseph Whaley, appeal to this court. But the exceptions are long and sometimes duplicate the same matter; and those of the city council, as assignee, and of William James Whaley, as surviving executor, it is believed, make all the questions necessary to be considered.

Exceptions of William James Whaley, surviving executor:

1. "We adopt the grounds of appeal made and served by the city council of Charleston on October 13th, 1882.

2. "Because the Circuit judge erred in refusing to take the estate out of the hands of the receiver and restore it to the custody of the defendant.

3. "Because the defendant is, as sole surviving executor, the only proper party to represent the estate of Joseph Whaley.

4. "Because the defendant, as executor, has never been removed.

5. "Because the defendant has been prevented, by want of funds, in defending and protecting the estate of Joseph Whaley as well as his own rights and interests in the case.

6. "Because the appointment of a receiver in this defendant's stead and place was never prayed for in plaintiffs' complaint, was unnecessary, was done without cause shown or alleged against him, when he was free from fault, and against his consent, and unjust to him.

7. "Because the judgments against the estate of Joseph Whaley were entered on claims which were fraudulent, and known to be so by the then sole executor, William Whaley, and before this defendant had qualified as executor; and the counsel for plaintiffs (Mr. S. Lord) admitted on the trial of the cause before Judge Fraser that the papers upon which the judgments against the estate were obtained were never signed in the handwriting of Joseph Whaley.

8. "Because the judgments having been obtained upon paper whereon the names of Joseph Whaley were not in his handwriting, nor authorized by him, should be set aside and the estate protected; and that this appellant, as sole surviving

executor, is the proper party to do it, is anxious to do so, and is prevented from doing so because the custody of the estate has not been restored to him.

9. " Because the defendant was never made a party to the suit, as required by the order of Judge Graham, of the 13th August, 1874, in that no summons or complaint were served on him, nor was he a party to the action at the time of the order of Judge Graham of 12th September, 1874.

10. " Because the receiver has not protected the estate against parties claiming to be creditors.

11. " Because, when an executor does not appeal (nor object) from an order appointing a receiver at the time the order is made, it will not prevent his subsequently asking the consideration of the court whether the order ought to be sustained.

12. " The necessity for a receiver having ceased to exist, the property should be restored to the legal owners."

Exceptions of city council, as assignee :

1. " Because the evidence before his Honor, Judge Fraser, clearly and positively establishes the fact that the causes of action on which judgments were entered against William Whaley, executor of Joseph Whaley, and which judgments were claimed to be debts for which the estate of Joseph Whaley was liable, were not causes of action for which the said Joseph Whaley in his life-time was liable, or which, after his death, were claims or demands for which his estate was liable.

2. " That the said causes of action, so far as they were claimed to be a charge on the estate of the said Joseph Whaley, purported to be endorsements on promissory notes drawn by William Whaley; and the evidence produced at the hearing clearly and positively established the fact that the endorsements purporting to have been made by Joseph Whaley were not so made by him, and not in his handwriting.

3. " That the testimony before the court, as given by experts in the question of handwriting, clearly and positively established the fact that the handwriting in what purported to be the endorsements of Joseph Whaley was the handwriting of William Whaley, the maker of the said notes and drawer thereof.

4. " That no agency, express or implied, direct or indirect, was

proved or attempted to be proved, by which William Whaley had power or authority to endorse on the said notes, or any of them, the name of Joseph Whaley, or to bind Joseph Whaley in his life-time, or his estate after his death, for any liability because of such endorsements, or in any manner whatever for the payment of the same.

5. "Because, whatever may have been the consideration for which William Whaley gave the said notes to the holder thereof, no testimony was offered which showed that such consideration, in whole or in part, passed to Joseph Whaley, or that he was in any manner concerned or interested therein.

6. "Because, so conclusive, and beyond the range of discussion, was the fact that what purported to be the endorsements in the handwriting of Joseph Whaley were not in the handwriting of Joseph Whaley, but were in the handwriting of William Whaley; that the counsel representing the plaintiff, at the hearing before Judge Fraser, stated that it was conceded that the endorsements were not in the handwriting of Joseph Whaley, but were made by William Whaley, the principal debtor; that he, the personal representative of the testator, could not interpose the defense without criminating himself, but nevertheless, in the cases in which judgments had been entered, because of such endorsements, against William Whaley, as executor of Joseph Whaley, such judgments were conclusive and bound the estate of Joseph Whaley; nor could the causes of action, because of which such judgments were entered, be inquired into.

7. "Because, with the testimony in the case before the court, it is held in the decree of Judge Fraser to be the law of this case and of the State, that where the name of the testator has, during his life, been written as endorser of a note by one who afterwards becomes the executor of the testator, and being sued because of such forged endorsement, allows judgment to be entered against him as such executor, the judgment so entered on such forged endorsement cannot be drawn in question, unless collusion is charged and proved to have existed between the plaintiff in the judgment and the defendant, he being the maker of the note and the executor in whose handwriting the name of his testator was placed on the note as such endorser.

8. "Because, while the facts of the case prove that a wrongful act was thus done to all who are or were entitled to the estate of Joseph Whaley, and which would have been redressed if known to the court before such judgment was rendered by it, to hold that when the judgment was entered the court could not control and correct it, would be to affirm that an act done by the court because of a fraud which had been practiced on it, could not be undone by it, and so that it must confirm the wrong.

9. "Because the Supreme Court of the State had, in the strongest terms, declared that the personal representatives or legatees of Joseph Whaley could not be considered as represented by or bound by the acts of William Whaley in his capacity as the executor of Joseph Whaley, whom the court, in its own language, declared to be "unfit to be intrusted with the administration of the assets of the testator," and, therefore, the representatives or legatees were, by the direction of this court, made parties in this case. And the case was sent back to the Circuit Court that the personal representatives or legatees might protect themselves and their interests in the estate of the testator against the wrongful acts of the executor. But if a wrongful act done by William Whaley before they had been so made parties could be shielded from all inquiry or relief by a fraud upon the court in admitting a judgment to be entered in a case wherein no legal cause of action existed to bind the estate of the testator, this would be, in fact, to deny the relief that the court professed to give, and admit parties in a case to defend their rights and interests, yet exclude them from the relief which, being parties in the case, they were entitled to ask.

10. "Because all the circumstances in the case being known to the Supreme Court, that court, in the strong terms used by them, indicated its purpose that there should be a full investigation of all the claims made against the representatives and legatees of Joseph Whaley; a purpose wholly defeated if, in the case of parties claiming to be creditors of Joseph Whaley, because of judgments admitted by the executor to be entered on endorsements of his own notes, in which he had wrongfully used the name of Joseph Whaley, such representatives and legatees were, because of judgments so entered, excluded from denying

that the endorsements so made could bind the estate of Joseph Whaley. The fact, moreover, being that such judgments so entered constituted a large part of the so-called claims and demands against the estate of Joseph Whaley.

11. "Because the case was before the court in the form of a creditors' bill, with the fund to be distributed under the order of the court, and distributed, therefore, according to the proof of the lawful and just character of each claim made against it. And although that claim may have been, by the assent of the executor, carried into judgment, if creditors or representatives or legatees of the testator showed the court that it was not a lawful and just claim, the mere circumstance that a judgment on it had been admitted to be entered by the executor, who had himself, and not his testator, created the claim by unlawful and dishonest means, could not make that a lawful and just claim which all the testimony before the court concerning the cause of action on which the judgment was entered, conclusively proved was not a lawful and just claim against the estate of Joseph Whaley. And if the plaintiff had been, without collusion on his part, made a victim of the fraud and wrong of the executor, and if a court, in giving its judgment, had been made also the instrument of giving protection, by its judgment, to that fraud and wrong, all these could never, in a court of equity, lead it to apply to the payment of a claim not just or lawful, the property of one who was not in conscience or in law liable for its payment."

First. As to the exceptions of William James Whaley, surviving executor. It is a mistake to suppose that the court ever undertook to "remove" the executors in the sense claimed, or that such was the effect of the appointment of a receiver. This court has held in reference to these very executors that "The Court of Equity has not the power to remove the executor," and after the death of William Whaley, the first qualified executor, actually substituted by order in place of his name, that of William James Whaley, as surviving executor on the record of a case which had been commenced against William Whaley alone, before the appointment of a receiver. *Gadsden* v. *Whaley*, 14 *S. C.* 214.

But the same case also held that the court may appoint a receiver as an executive officer " to administer the assets of the estate under the direction of the court, which may, for the purpose of preserving the property, restrain the executor from meddling with the management of the estate, and compel him to give up the control of it to the receiver." That is precisely what was done in this case, and nothing more was meant when, in giving a reason why the legatees should be let in as parties to a creditors' bill, this court said : " When, however, the executor is insolvent the rule [as to parties] is different, and especially when, as in this case, the executor is not only insolvent, but has been removed from office, as it were, on the ground of misconduct, and has become thereby not only incompetent, but has been rendered incapable of representing the legatees," &c. ; that is to say, restrained from meddling with the administration of the estate. There was certainly ample cause for the appointment of a receiver, so far as concerned the acting executor, William Whaley, who had shown, to say the very least of it, that he had been unfaithful to the trust reposed in him.

But, it is urged that in doing so the effect was to supersede, also, the other executor, William James Whaley, against whom there was and is no charge of improper conduct ; and the claim is now made that since the death of William Whaley, who first qualified, the administration of the estate should be taken from the receiver and intrusted to him as surviving executor. It is true there is no evidence that William James Whaley joined with his co-executor, William Whaley, in the maladministration of the estate, but it must be remembered that he did not qualify until all the damage had been done by his co-executor, and when he did so and was made a party he disclaimed all responsibility, and prayed to be " dismissed with his reasonable costs and expenses," &c. He did not object to the appointment of a receiver or appeal from the order. " The death of one of two executors (or his maladministration) and the refusal of the other to act, afford abundant reason for the interference of equity by appointing a receiver to take charge of the assets," &c. *High Rec.*, § 718.

At the time the appointment was made the circumstances

were such that the court, in the interest of all concerned, could do no less than take possession of the assets by a receiver, and now, when he has possession, after the lapse of years and a long litigation, the court cannot reverse all that has been done only for the reason that the surviving executor, William James Whaley, has changed his mind upon the subject and is now willing to undertake the active administration of what remains of the estate. So much of Judge Fraser's decree as refused the motion to take the estate of Joseph Whaley out of the hands of the receiver appointed by the court and restore it to the custody of William James Whaley, as the surviving executor, is affirmed.

Second. The exceptions of the city council of Charleston, assignee of legatees, as to the judgments of Fraser & Dill and others, which were recovered against William Whaley while sole qualified executor.

Upon this subject, also, there seems to be a misapprehension as to the scope and effect of former orders. It is earnestly urged that the right of the legatees to set aside these judgments has already been practically decided; that Judge Wallace's order appointing a receiver and giving him authority to institute proceedings to try the validity of any claim against the estate, and the former judgment of this court allowing the legatees to be made parties after the facts had transpired in the examination of the city scrip, as to the manner in which William Whaley signed his father's name, amounted, substantially, to a declaration in advance against the validity of the said judgments.

This is not only a mistake, but a gross injustice. It would be improper to prejudge any question. The court never undertakes to decide anything until the issue is made, the proof offered and the parties heard. The developments on the former trial in reference to the city stock were extraordinary; they were of such a character as, in our judgment, to make proper the largest scope of inquiry allowed by law as to all the transactions of William Whaley as executor of his father's will. In actions to marshal assets, especially when the executor is insolvent, the legatees have an interest and should be made parties, and we think that is the general practice. The condition of this estate

was very peculiar, and, if any ever did, needed the attention of the real parties in interest. In the progress of the litigation against the acting executor, it suddenly appeared that, by signing his father's name, he was appropriating the estate intrusted to his care to the payment of his own debts. In the interest of justice the court is always inclined to full investigation, and to give parties interested the right to be heard.

Under these circumstances a receiver was appointed with authority to institute proceedings to try the validity of claims against the estate, and the legatees who applied were made parties. But by these orders there was not the slightest intention to prejudge anything. The only object was to give those who had been so grossly wronged by one supposed to be acting for them, the fullest opportunity of making any and all questions they might be advised. It could not then be foreseen what precise issues could or would be made or what facts could be proved. It might turn out that besides the matters in judgment there were other claims, which the executor, left to himself, might decline to contest, or, as to these already in judgment, it might appear that the creditors had knowledge of the improper acts of the executor, and that the judgments were obtained by fraud and collusion between them and the executor.

By opening the door to inquiry, the court did not intend to decide, or to give the least intimation of opinion as to the case which might be made. On the contrary, Judge Wallace expressly said, that the question as to the judgments was not then " ripe for decision but may again arise in the subsequent progress of the case;" and this court, in the judgment allowing the legatees to be made parties, said, " What steps they may or ought to take for the protection of their interests after they have been made parties, we regard it premature to discuss now." So that in the subsequent progress of the case, the question for the first time has arisen, and it must now be decided according to the rights of the parties, without being affected in the least by any former proceedings or orders in the case.

Have then the legatees (through the city council) the right now to impeach the judgments recovered against William Whaley as executor, upon the ground that he fraudulently omitted to

make a defense which would have prevailed, and of which he had knowledge at the time?

1. As to the judgment of Gadsden and wife for $15,129. We have not been able to discover the slightest proof that this judgment was recovered upon paper alleged to have been signed by the executor, William Whaley, for his father, or that he fraudulently allowed it to pass into judgment without defense, in violation of his duty as executor. On the contrary, in this case at least, the executor, William Whaley, made vigorous defense, and after his death the surviving executor, William James Whaley, was made a party (the case having been commenced before a receiver was appointed), and the judgment affirmed upon appeal to this court as late as 1880. The judgment is clearly beyond the reach of impeachment. See *Gadsden* v. *Whaley*, 14 *S. C.* 214.

2. As to the judgment of R. K. Scott. This judgment was not rendered in Charleston, but in Columbia, where the record remained. We do not see any evidence that the obligation sued on was ever before the experts who testified as to the handwriting of Joseph Whaley in Charleston. From the exemplification of the record, it appears that the obligation sued on was a guaranty purporting to have been signed by both William Whaley and Joseph Whaley in the presence of Julian Mitchell, Esq., as a witness, and that there was a defense and the verdict of a jury. Under these circumstances we see no evidence in the case tending to impeach the validity of this judgment.

3. Then as to the judgment of Fraser & Dill, and others in the same condition, which were rendered in Charleston. It seems that the plaintiffs Fraser & Dill (taken as a representative case) gave value for a note of William Whaley, which had upon it what seemed to be the endorsement of Joseph Whaley; that after his death they sued William Whaley, as the executor of Joseph, and recovered judgment on the endorsement, June 8th, 1874, which was entered up in the usual form, was proved before the referee in the earlier stages of the case, and lay undisputed until after the developments in the matter of the city scrip, in which inquiry, it will be remembered, certain experts, examined as witnesses as to the comparison of the different

signatures of Joseph Whaley, gave it as their opinion that the endorsement on the note, like the transfer of the Charleston scrip, was not in the handwriting of Joseph Whaley, and thereupon (1881) some of the legatees assigned their interest to the city council, and in that way asked the court to set aside the judgment on the ground that the executor, William Whaley, fraudulently allowed it to be recovered against him as executor, when he could have made a successful defense.

This is the most difficult question in the case, and its inherent difficulty has been increased by the use of testimony which fell out incidentally upon another branch of the case, and which, if offered directly in the new issue against the judgment, would have been inadmissible. In reference to this testimony, it may be proper to say, in passing, that Judge Fraser, in settling the case, ordered stricken out the folios which claimed that its truth had been admitted by counsel. "The admissions therein referred to, having been made by counsel in the argument, and only for the purpose of the argument," &c.

It is elementary that the judgment of a competent court, having jurisdiction of the subject-matter, is absolutely conclusive against all the parties, and the matters decided by it are *res adjudicata*, and may not be stirred again by them. "A judgment is properly a bar, on principles of public policy, because the peace and order of society, the structure of our judicial system and the principles of our government, require that a matter once litigated should not again be drawn in question by the same parties or their privies." *Freem. Judg.*, § 247 ; *Manigault* v. *Deas, Bailey Eq.* 293, and authorities.

Was the identical matter now sought to be inquired into, viz., whether the endorsement was that of Joseph Whaley, decided in the former action at law against the executor on that endorsement ? It does not clearly appear that proof was offered, and the point in question actually decided by the court; but that was not indispensable, provided the precise matter was involved in the issue, so that it had of necessity to be decided before the judgment could have been given. *Hart* v. *Bates*, 17 *S. C.* 42. It seems to us that the identical matter now charged was necessarily involved in the action at law upon the endorsement. If

the proof of handwriting was not made, it should have been required, and, failing to require it, the result must be the same as if it had been formally made.

It may be that the precise matter of genuineness would not have been necessarily adjudged, if, at the time the judgment was rendered, the endorsement covered a hidden fraud which was unknown to the defendant as well as the plaintiffs, on the principles announced in the above stated case of *Hart* v. *Bates,* "that it is not necessary for a party in ignorance to assail every paper proved as fraudulent in order to escape the penalty of being precluded from doing so at a future time in case he should discover evidence that would justify such charge."

But we cannot see how the executor, Whaley, can claim the benefit of this principle. If, as alleged, the endorsement was in his own handwriting, he must have known it when he was sued—indeed, he was probably the only one that did know it. He was certainly bound by the judgment, and, if now living, he could not be allowed to impeach it. "An adjudication is final and conclusive, not only as to the matter actually determined, but as to any other matter which the parties might have litigated and had decided as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate province of the original action, both in respect to matters of claim and defense." *Freem. Judg.*

The executor being bound, the legatees, his privies in estate, are also bound, unless there is something in the extraordinary circumstances of the case which makes it exceptional. "A judgment against an administrator (or executor) is binding on the creditors and legatees of the estate." *Freem. Judg.,* § 163; *Mauldin* v. *Gossett,* 15 *S. C.* 578, and authorities. This is admitted to be the general rule; but it is insisted that this is a peculiar case and does not fall within the rule. It is insisted, in behalf of the legatees, that they should not be bound by the judgment, for the reason that, when the action was brought at law against the executor, they were not made parties, and never had an opportunity to be heard as to that endorsement or the judgment upon it.

We think the legatees should have been made parties to this

bill on the equity side of the court to marshal assets, and when some of the legatees made an application to be let in as parties, this court so held. But it was very different as to the action at law upon the endorsement. To that action the legatees had no right to be made parties; the regularly qualified executor was the proper representative of the estate, and was the only party to be sued. *Winstanley* v. *Savage,* 2 *McC. Ch.* 435; *Fretwell* v. *Neal,* 11 *Rich. Eq.* 571.

It was further strongly urged upon us that this case was exceptional, because the executor had betrayed his trust, and had not only neglected the interest of the legatees, but, through his powers as executor, had systematically appropriated the assets of the estate to the payment of his own debts; and that, in consequence of such conduct, this court actually superseded him in the administration of the estate by the appointment of a receiver, for the reason that he " was unfit to be intrusted with the assets of the testator." It is undoubtedly true that the executor grossly wronged the legatees, but the position which enabled him to do it was intrusted to him by the testator himself, from whom the legacies came, and under whose will they claim as beneficiaries. We know of no principle which would authorize the court to deny to him the full measure of rights belonging to other executors up to the time when the administration was taken out of his hands; or to qualify in any way the effects of acts done by him while he acted as sole qualified executor of the will. The law applicable in the case of other executors must be applied to him and his acts.

It was still further pressed in argument that there must have been fraudulent collusion, in obtaining the judgments, between William Whaley, the executor, and the creditors, and especially Fraser & Dill and the others who obtained their judgments on June 8th, 1874, for the reason that on that very day an injunction was granted in the cases first filed against Whaley as executor—that of the People's Bank of Charleston, restraining creditors from suing at law—and that such haste and disregard of the order indicated knowledge of something wrong, and if the forgery was not actually known, proper inquiry would

have disclosed it. We cannot see in this circumstance alone any evidence of collusion. Such restraining order is the usual incident of a creditors' bill, and affords no notice of frauds perpetrated or to be perpetrated. Although on the same day, it does not appear whether the judgments were entered before or after the restraining order.

Besides, Judge Fraser says: "It does not appear that the order was in any way served on the creditors, and if it had been it could only have rendered the creditors liable to attachment for contempt. The full record of the case of the People's Bank of Charleston is now before me, and it seems to have been allowed to drop, and that it has been superseded by these proceedings, under which there has been no order of injunction against creditors," &c. From the nature of the case, Whaley would not be apt to make disclosures implicating himself in forgery to creditors who had trusted him, and whom he had deceived. They never doubted that they had Joseph Whaley's endorsement, and in that view there was nothing to conspire about. We see no evidence that the creditors fraudulently colluded with the executor Whaley in the rendition of the judgments.

Besides, suppose we pass by the doctrine of technical estoppel, and consider this as a direct assault upon the judgment by the legatees and the proof regularly made in the case, how would the matter then stand? In that case would the fraud of the executor in allowing it to pass against him, alone be sufficient to set aside the judgment regularly recovered by creditors, who were ignorant that there was any defense, and innocent of any fraud, and who had probably paid their money on the faith of the endorsement of the father?

After reflection and with some hesitation we are inclined to think that the recent *ex parte* fraud of the executor alone was not sufficient for that purpose as against innocent judgment creditors. It is true that, as a rule, fraud avoids everything it touches. It is also true that the courts abhor it, and will not give effect to it to the injury of innocent third parties; but, as we understand it, this righteous principle does not cover the case where the prayer for relief comes from the party himself

who committed the fraud, or from his privies, who, though not in fact participating, cannot, as to the estate, be considered third parties in the sense intended.. " To entitle a party to relief from a judgment it must be made evident that he had a defense upon the merits, and that such defense has been lost to him without such loss being attributable to his own omission, neglect or default. The loss of a defense, to justify a court of equity in recovering a judgment, must, in all cases, be occasioned by the fraud or act of the prevailing party, or by mistake or accident on the part of the losing party, unmixed with any fault of himself or his agent. * * * Equity will not relieve a party from a judgment procured by his own fraud." *Freem. Judg.,* §§ 486, 489.

The executors deceived both the creditors and legatees—the first strangers and the latter privies. The legatees, of course, have their redress against the executor who betrayed their trust, but, we think, as against innocent third parties, they cannot have removed a judgment which the executor allowed to be recovered against himself as executor, without fraud or collusion on the part of the judgment creditors. *Russell* v. *Walker, Rich. Eq. Cas.* 232; *Walker* v. *May,* 2 *Hill Ch.* 24; *Vaughan* v. *Hewitt,* 17 *S. C.* 444; *Castellaw* v. *Guilmartin,* 54 *Geo.* 299; *United States* v. *Throckmorton,* 98 *U. S.* 68.

In the case last cited Mr. Justice Miller, in delivering the judgment of the Supreme Court, said : " We think the decisions establish the doctrine on which we decide the present case, namely, that the acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered. That the mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases," &c.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

In this case there was a petition for rehearing upon the grounds considered by this court in their order refusing it.

December 8th, 1883.   The following order was passed

PER CURIAM.   We have carefully examined the grounds stated for a rehearing in this case, and find that they were all gravely considered before the judgment was pronounced.

First. It is true that this court held that the legatees were proper parties in this proceeding to marshal the assets of Joseph Whaley's estate, and as to such as applied ordered them to be brought in as parties; but that is a very different matter from their being proper or necessary parties in the action at law against William Whaley as executor on the endorsements, in which the judgments in controversy were obtained.   The cases are as different as possible.

Second. This court, in its judgment, gave the city council all the rights which belonged to their new character as assignees of legatees, precisely as if they had never, in any capacity, been parties before.   Their rights were decided as if the legatees themselves had been before the court.

Third. It is a mistake to suppose that the judgments which were the subject of this contention, were "orders, decrees or acts done in the progress of this case," as alleged, either before or after the legatees (represented by the city council as assignees) were made parties.   These judgments were obtained at law against the executor, as the proper representative of the estate, before this action to marshal the assets of the estate was commenced on the equity side of the court.

Fourth. The order directing the complaining legatees to be brought in as parties, to make any questions they might be advised, did not commit the court in advance upon any issue which they, being admitted, might be advised to make, as appears fully in the judgment.   Every issue had to be decided according to the principles applicable to it.

Fifth. The court had carefully considered the case of *Wilson*

v. *Kelly, ante* 160, referred to in the petition, before the judgment was pronounced. There was nothing ruled in that case inconsistent with the rulings in this. In that case the judgment assailed was recovered against the administrator in a suit in equity to foreclose a mortgage upon real estate in which the heirs-at-law (to whom the title of the land had descended) should have been made parties in the action to foreclose, while in this the judgments contested were recovered in actions at law upon alleged endorsements, in which the legatees were not proper parties. In that case, therefore, the contest was between heirs-at-law and a creditor, while in this the only issue was between legatees and creditors who had obtained judgments against the executor representing the legatees, and before the proceeding to marshal assets was instituted or the legatees had any right to be heard except through the executor. In the case of *Wilson* v. *Kelly* the court say (page 166): "Now, while it may be true, so far as the personal estate is concerned, that the administrator does represent the distributees, who, under our statute, are the same persons as the heirs, inasmuch as the legal title to that kind of property vests in the administrator upon the death of the intestate, the same cannot be said as to the real estate, for with that the administrator has nothing to do. *Mauldin* v. *Gossett,* 15 *S. C.* 578. The heirs, not having been represented by the administrator in the action in which the judgment in question was obtained, have never been heard, or had an opportunity of being heard, upon the issues in that action; and, therefore, it would seem to follow that they ought now to be allowed the opportunity of being heard upon such issues, one of which is as to the amount legally due upon the bond, and that they will not be estopped by a judgment obtained in an action to which they were not parties or privies." There is nothing in the case of *Wilson* v. *Kelly* which even intimates that legatees under a will have the right under a subsequent proceeding to assail a judgment rendered against the executor, upon the ground that they were not parties in the action. In this case there is no complaint except by legatees who were privies of the executor, and represented through him when the judgment at law was rendered against him.

No question as to the rank of the demands in marshaling the assets was before us, and, of course, nothing was decided on that subject.

The petition for a rehearing is refused.*

---

* This completes the cases of November Term, 1882.